Eduardo J. CHACON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 75646.

Missouri Court of Appeals, Western District.

Sept. 24, 2013.

---

Craig A. Johnston, Assistant Public Defender, Columbia, MO, for appellant.

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

KAREN KING MITCHELL, Judge.

Eduardo J. Chacon appeals the denial, following an evidentiary hearing, of his Rule 24.035 motion for post-conviction relief.[1] Chacon argues that the court clearly erred in denying his motion because his attorney was ineffective in that he unreasonably failed to inform Chacon that he would be deported if he pled guilty to cocaine possession and forgery.[2] Chacon asserts that, had he been informed that either of these offenses required deportation, he would not have pled guilty. Because we find that the court did not clearly err, we affirm the denial of Chacon's motion for post-conviction relief.

## Factual and Procedural Background

In March 2010, Chacon was charged with two class C felonies: possession of a controlled substance (cocaine) under section 195.202, and forgery under section 570.090.1(4).[3] On April 19, 2010, Chacon pled guilty to both offenses. Chacon, a native of Mexico, was twenty-four years old at the time of his arrest and had been living in the United States for approximately sixteen years.[4]

---

1. All rule references are to the Missouri Supreme Court Rules (2013), unless otherwise noted.

2. Throughout this opinion, we use the terms deportation and removal interchangeably. "The changes to our immigration law have also involved a change in nomenclature; the statutory text now uses the term 'removal' rather than 'deportation'" *Padilla v. Kentucky,* 559 U.S. 356, 364 n. 6, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

3. All statutory references are to Revised Statutes of Missouri 2000, as updated through the 2009 Cumulative Supplement, unless otherwise noted.

4. Chacon's first language is Spanish, but he also understands and speaks English. There was no language barrier with his defense counsel because his attorney was bilingual. At the time of his arrest, Chacon was living with his sister. In his deposition, Chacon also indicated that he is married and that his wife lives in Kansas; there was, however,

At the plea hearing, Chacon admitted to possessing cocaine and having an identification card with his picture and someone else's information on it. Chacon obtained the identification card after his visa expired in 2010. Chacon confirmed that he discussed his case with his attorney, that his attorney did everything Chacon asked him to do, that he was happy with his attorney's representation, that he understood the charges against him, and that he understood he was giving up certain rights by pleading guilty. Chacon understood the possible range of punishment for the offenses and that, pursuant to the plea agreement, the State was recommending two years on each count to be served concurrently. Chacon also told the motion court that no other promises were made to him.

The plea court found that Chacon voluntarily, intelligently, and knowingly entered his guilty plea, and sentenced him to two years in prison for each count to be served concurrently. There was no discussion at the plea hearing of the risk of deportation.

Chacon filed a pro se Rule 24.035 motion, and appointed counsel filed an amended motion. Chacon argued that he was denied effective assistance of counsel in that his attorney failed to inform him that he would be deported if he pled guilty to the charges. Chacon further claimed that, had he been informed of the mandatory deportation consequences, he would have insisted on proceeding to trial. Chacon was deported to Mexico as soon as he was paroled. As of the date of the evidentiary hearing, Chacon remained in Mexico and was told by immigration authorities that he is not now allowed to return to the United States. Both Chacon and his attorney testified at the evidentiary hearing. Chacon was deposed three days before the hearing and his testimony was provided through a transcript of the deposition.

Chacon testified that, following his arrest but before he pled guilty, immigration authorities issued an order to detain him. He testified that the same authorities told him that, but for the felony convictions, he would not have been deported. Chacon also spoke with an immigration attorney about his expired visa at some point before his arrest. When asked why he did not contact this same immigration attorney after his arrest, he said that he did speak with her and that she informed him to contact her after he resolved his felony charges. Chacon testified that when he asked his attorney about the possible immigration consequences of pleading guilty, his attorney told him that he did not know immigration law.

Chacon's attorney testified that Chacon asked him about the risk of deportation. However, unlike Chacon's recollection of the conversation, counsel testified that he told Chacon that "if he pled guilty to the charges, he would *very likely be deported* and wouldn't be able to come back." (Emphasis added.) Defense counsel also advised Chacon to seek advice from an immigration attorney.

The motion court denied Chacon's Rule 24.035 motion for post-conviction relief. In denying the motion, the court found that Chacon "did not allege any facts [that] would support this claim for relief." The court noted that "the record refute[d] [Chacon's] claim and nothing testified to at the hearing, with the exception of [Chacon's] self-serving testimony dispute[d] the record." [5] The motion court also found

---

conflicting evidence as to whether Chacon's wife is living or deceased. Chacon's daughter and two stepdaughters were living with their grandmother in Kansas City, Kansas.

5. Although the motion court did not make an express credibility finding with regard to Chacon, the court's findings noted here, in addition to the fact that Chacon's and defense

that, even if counsel had been ineffective, Chacon failed to demonstrate that he suffered any prejudice. Chacon appeals.

## Standard of Review

▮▮▮ Appellate review of the denial of a post-conviction motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). Clear error is established "if a review of the entire record leaves the appellate court 'with a definite and firm impression that a mistake has been made.'" *Wilhite v. State,* 339 S.W.3d 573, 576 (Mo.App.W.D.2011) (quoting *Harper v. State,* 256 S.W.3d 220, 222 (Mo.App.W.D.2008)). We defer to the motion court's determinations of witness credibility. *Id.* Moreover, "[e]ven if the stated reason for a circuit court's ruling is incorrect, the judgment should be affirmed if [it] is sustainable on other grounds." *Swallow v. State,* 398 S.W.3d 1, 3 (Mo. banc 2013).

## Analysis

Chacon raises one point on appeal. He claims that the motion court clearly erred in denying his post-conviction motion because he established that his attorney was ineffective in failing to inform him that he would be deported if he pled guilty to possession and forgery. He further claims that he suffered prejudice because, had he been informed that either of the offenses required deportation, he would not have pled guilty and would have proceeded to trial.

counsel's testimony was in direct conflict, indicate that the court found Chacon's testimony not credible. And, as noted *infra,* we defer to the motion court's determinations of witness credibility. *Wilhite v. State,* 339 S.W.3d 573, 576 (Mo.App.W.D.2011).

## Chacon's Convictions and the Applicable Immigration Law

As "immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation[, t]he 'drastic measure' of deportation ... is now virtually inevitable for a vast number of noncitizens convicted of crimes." *Padilla v. Kentucky,* 559 U.S. 356, 360, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (quoting *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948)). Chacon, a native of Mexico whose visa had expired and who was therefore living in the United States illegally when he was charged, pled guilty to two class C felonies, cocaine possession and forgery.

▮▮▮ Under the Immigration and Nationality Act (INA), certain criminal offenses subject noncitizens to automatic deportation. The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission *is deportable.*" [6] 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). Forgery is an aggravated felony under the INA. 8 U.S.C. § 1101(a)(43)(R). Additionally, "[a]ny alien who at any time after admission has been convicted of a violation of ... any law or regulation of a State ... relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, *is deportable.*" *Id.* § 1227(a)(2)(B)(i) (emphasis added). A controlled substance conviction may, under certain circumstances, also qualify as an aggravated felony.[7] *See id.* § 1101(a)(43)(B). Conviction

6. An "alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

7. A controlled substance offense may constitute an aggravated felony under the INA if it constitutes "illicit trafficking in a controlled substance." 8 U.S.C. § 1101(a)(43)(B). A

of an aggravated felony bars noncitizens from seeking cancellation of removal. *Id.* § 1229b(a)(3), (b)(1)(C); *see also Carachuri-Rosendo,* 130 S.Ct. at 2580 (noting that aggravated felonies are "a category of crimes singled out for the harshest deportation consequences").

■ Here, in addition to his convictions, Chacon faced additional challenges because his visa was expired; therefore, he had already lost any residency status he may once have had. *See* 8 U.S.C. § 1229b(a)-(b) (noting that, under certain circumstances, cancellation of removal may be available "for certain permanent residents" and "for certain nonpermanent residents"). The law is clear that, after pleading guilty to cocaine possession and forgery, Chacon was deportable, meaning that deportation was "virtually inevitable." *See Padilla,* 559 U.S. at 359, 130 S.Ct. at 1478 (noting that Padilla, who was a lawful permanent resident, had pled guilty to transporting a large amount of marijuana, and that this guilty plea "made his deportation virtually inevitable").

### Ineffective Assistance of Counsel and the Application of *Padilla*

■ Chacon alleges that his attorney was ineffective in failing to inform him that he faced mandatory deportation if he pled guilty to cocaine possession and forgery. Chacon appears to argue that anything short of advice that he was subject to "mandatory deportation" or "automatic deportation," is deficient performance under *Padilla.* Chacon further argues that the motion court clearly erred in finding that he failed to demonstrate prejudice. Because we disagree that Chacon's attorney's performance was deficient, we need not reach the issue of prejudice.[8]

"drug trafficking crime" is "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). Under federal law, "[a] felony is a crime for which the 'maximum term of imprisonment authorized' is 'more than one year.'" *Carachuri–Rosendo v. Holder,* 560 U.S. 563, 130 S.Ct. 2577, 2581, 177 L.Ed.2d 68 (2010) (quoting 18 U.S.C. § 3559(a)). Thus, "in order to be an 'aggravated felony' for immigration law purposes, a state drug conviction must be punishable as a felony under *federal* law." *Id.* at 2582; *see also Moncrieffe v. Holder,* — U.S. —, — — —, 133 S.Ct. 1678, 1684–85, 185 L.Ed.2d 727 (2013) (explaining the "categorical approach" generally employed by the Court to determine if a state offense that is a generic crime, such as "illicit trafficking in a controlled substance," is comparable to an aggravated *offense* under the INA, and noting that the approach looks " 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony" (quoting *Gonzales v. Duenas–Alvarez,* 549 U.S. 183, 186, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007))). Except for possession of certain specified substances, which included cocaine

base until the law was amended by the Fair Sentencing Act on August 3, 2010, "a first-time simple possession offense is a federal misdemeanor." *Carachuri–Rosendo,* 130 S.Ct. at 2581; *see also* 21 U.S.C. § 844(a). Here, we do not have sufficient information to determine whether Chacon's cocaine possession conviction constituted an aggravated felony, and it is not a determination we need to make in this appeal. We do, however, note that the complexity of immigration law is highlighted by the fact that multiple federal statutes have to be examined in order to make this determination, even if the necessary information was available.

8. Chacon argues that the motion court clearly erred in finding that he did not suffer any prejudice. We agree that the motion court applied an incorrect legal standard when it held that "[t]here was no indication in the pleadings or at the hearing that had [Chacon] taken his case to trial, he would have prevailed." *Compare Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that in the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

■ To succeed on a claim of ineffective assistance of counsel, Chacon must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation." *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012). Second, the defendant must show that he was prejudiced by his attorney's deficient performance. *Id.* "Both of these prongs must be shown by a preponderance of the evidence to prove ineffective assistance of counsel." *Id.* To show that his attorney's performance was deficient, a defendant "must overcome a strong presumption that counsel's conduct was reasonable and effective." *Id.* In the context of a guilty plea, to demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Moreover, "[i]f a conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Peiffer v. State*, 88 S.W.3d 439, 445 (Mo. banc 2002).

■ With regard to counsel's advice about the risk of deportation, the landscape of the law changed considerably with the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In *Padilla*, the Court announced a new rule,

holding "that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, —— U.S. ——, ——, 133 S.Ct. 1103, 1106, 185 L.Ed.2d 149 (2013). Thus, the Court "answered a question about the Sixth Amendment's reach that [it] had left open, in a way that altered the law of most jurisdictions." *Id.* at 1110.

In support of this new rule, the Court noted that changes to immigration law over the past 90 years have "dramatically raised the stakes of a noncitizen's criminal conviction." *Padilla*, 559 U.S. at 364, 130 S.Ct. at 1480. As such, "[t]he importance of accurate legal advice for noncitizens accused of crimes has never been more important." *Id.* These changes supported the Court's "view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part [ ]—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* And, the Court noted, "[a]lthough removal proceedings are civil in nature, ... deportation is nevertheless intimately related to the criminal process," and has long been recognized as "a particularly severe 'penalty.' " *Id.* at 365, 130 S.Ct. at 1481 (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740, 13 S.Ct. 1016, 37 L.Ed. 905 (1893)). The Court further emphasized the importance of legal advice about the risk of deportation when it recognized that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 366, 130 S.Ct. at 1481.

would have insisted on going to trial"), *with Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that in order to satisfy the prejudice requirement "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different"). However, we do not agree that reversal is required as we uphold the motion court's denial on other grounds. *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013).

In *Padilla,* the defendant, a lawful permanent resident from Honduras who had lived in the United States for over 40 years, pled guilty to transporting a large amount of marijuana. *Id.* at 359, 130 S.Ct. at 1477. Padilla's counsel not only failed to advise him of the risk of deportation but also provided Padilla with incorrect advice when he told him "that he 'did not have to worry about immigration status since he had been in the country so long.'" *Id.* (quoting *Kentucky v. Padilla,* 253 S.W.3d 482, 483 (Ky.2008)). As a controlled substance offense, Padilla's crime was a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i). *Id.* at 368, 130 S.Ct. at 1480. "[T]he terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* The Court concluded that Padilla's situation was "not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368–69, 130 S.Ct. at 1483.

■ When applying the *Strickland* standard to the new rule announced in *Padilla,* the Court held that an objective standard of reasonableness requires counsel to "advise [his or] her client regarding the *risk* of deportation." *Id.* at 367, 130 S.Ct. at 1482 (emphasis added). The Court also recognized that "[i]mmigration

law can be complex," that it is its own legal specialty, and that some attorneys practicing criminal law "may not be well versed in it." *Id.* at 369, 130 S.Ct. at 1483. The Court went on to note that, due to this complexity in the law, "[t]here will . . . undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id.* "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* "But, when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear." *Id.*

In the present case, Chacon was convicted of two offenses that made him "deportable." 8 U.S.C. § 1227(a)(2)(A)(iii), (a)(2)(B)(i). Thus, from reading the applicable statutes, it can be determined that the convictions made his deportation presumptively mandatory. Defense counsel testified that he provided Chacon with the following advice: "if he pled guilty to the charges, *he would very likely be deported and wouldn't be able to come back.*" (Emphasis added.) Chacon argues that, under *Padilla,* his attorney was required to specifically inform him that he was subject to "mandatory deportation." We disagree with Chacon's reading of *Padilla's* holding.[9]

9. In his argument, Chacon relies on *Commonwealth v. Gordon,* 82 Mass.App.Ct. 389, 974 N.E.2d 645 (2012) to support his claim that his attorney was required to inform him of his "mandatory deportation." In *Gordon,* the defendant pled guilty to firearms offenses and assault and battery of a police officer, and was provided the following warning by the court in his plea colloquy: "'a disposition of this nature *could* affect your status with the department of immigration and naturalization to the extent that it could result in . . . deportation.'" *Id.* at 647 (emphasis added). More-

over, Gordon's counsel provided him with incorrect advice regarding deportation. *Id.* at 648. In its analysis, the Massachusetts Court of Appeals noted that *Padilla* "'held that defense counsel's failure to advise a client that a consequence of his guilty plea *likely* would be deportation constituted ineffective assistance of counsel.'" *Id.* at 651 (emphasis added) (quoting *Commonwealth v. Clarke,* 460 Mass. 30, 949 N.E.2d 892, 894 (2011), *abrogated by Chaidez v. United States,* —— U.S. ——, 133 S.Ct. 1103, 185 L.Ed.2d

*Padilla* held that defense counsel is required "to provide advice about the risk of deportation arising from a guilty plea." *Chaidez*, 133 S.Ct. at 1105. The Court further explained its holding by noting that, when the law is unclear as to the exact consequences of a plea (which may often be the case given the complexity of the law and the wide variety of factual circumstances each defendant may face), "an attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483. However, when the deportation consequence is clear, as it was in *Padilla* and as it is here, defense counsel has an equally clear duty to give correct advice. *Id.*

 We find that the motion court did not clearly err in finding that Chacon's defense counsel satisfied the performance requirement set forth in *Padilla*. Chacon's convictions made his deportation presumptively mandatory, and the motion court could properly find that advice that he "would very likely be deported and wouldn't be able to come back," did not fall below what is required of a reasonably competent attorney under the circumstances. *Padilla* does not require that counsel use specific words to communicate to a defendant the consequences of entering a guilty plea. Rather, it requires that counsel *correctly* advise his client of the *risk* of deportation so that the plea is knowing and voluntary. In this case, while we recognize some distinction between the statements that removal was "very likely" versus "mandatory," the motion court did not clearly err in finding that counsel adequately advised Chacon of the risk of deportation so as to allow Chacon to make a knowing and voluntary decision to plead guilty. Additionally, Chacon's counsel emphasized the risk of deportation when he advised Chacon that he would not be able to return to the United States and to consult an immigration lawyer. Therefore, the court did not clearly err in denying Chacon's motion for post-conviction relief.

### Conclusion

Defense counsel's advice regarding Chacon's risk of deportation satisfied the requirement set forth in *Padilla*; therefore, we hold that Chacon was not denied effective assistance of counsel. We affirm the judgment of the motion court denying Chacon's Rule 24.035 motion for post-conviction relief.

THOMAS H. NEWTON, Presiding Judge, and GARY D. WITT, Judge, concur.

149 (2013)). *Gordon* cited the applicable federal provisions, noted that the defendant had pled guilty to an "aggravated felony," and concluded both that his immigration consequences were clear and that effective counsel "should have advised the defendant appropriately on this issue before he pleaded guilty." *Id.* at 652–53. The case was then remanded for an evidentiary hearing "to address the ambiguities and gaps in the affidavits" and the issue of prejudice. *Id.* at 654. We disagree with Chacon that this holding supports his argument that his attorney was *required* to advise him that he was subject to "mandatory deportation." The holding in *Gordon* simply restates the holding in *Padilla*, that defense counsel has a duty to provide correct advice when the deportation consequences are clear.