**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40777**

| | | |
|---|---|---|
| GERMAN POPOCA-GARCIA, | ) | 2014 Opinion No. 47 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: 5/30/14 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. David C. Nye, District Judge.

Order denying petition for post-conviction relief, <u>affirmed</u>.

Maria Elena Andrade, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

German Popoca-Garcia appeals from the order denying his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Popoca-Garcia is a citizen of Mexico and prior to his deportation, he was a permanent resident of the United States. Pursuant to a negotiated plea agreement, Popoca-Garcia pled guilty to lewd conduct with a child under the age of sixteen, a violation of Idaho Code § 18-1508. At the change of plea hearing, the court ensured that Popoca-Garcia's plea was knowingly, intelligently, and voluntarily made. After the court accepted the plea, Popoca-Garcia's trial counsel informed the court that his client would likely face immigration consequences based on the guilty plea and that his permanent resident status could be in jeopardy. The court then asked if Popoca-Garcia understood that he could be deported. Popoca-Garcia answered, "Yes." The court ordered a psychosexual evaluation and later sentenced

1

Popoca-Garcia to a unified term of ten years with two years determinate and retained jurisdiction. The court later relinquished jurisdiction and ordered Popoca-Garcia's original sentence executed. Popoca-Garcia did not appeal his conviction and sentence.

Subsequently, Popoca-Garcia filed a petition for post-conviction relief asserting that his trial counsel failed to adequately inform him of the immigration consequences resulting from his guilty plea. A notice of intent to dismiss was issued by the district court and after both parties responded, the court held an evidentiary hearing. At the hearing, trial counsel testified that he unequivocally told Popoca-Garcia that under federal law, the offense required deportation. He also testified that he told Popoca-Garcia that an immigration agent had told the prosecutor that the agent did not think the crime required deportation. Trial counsel also testified that he told Popoca-Garcia the immigration agent was mistaken and that he would be deported. The only other witness to testify was Popoca-Garcia's stepfather. He testified that trial counsel did not answer all his questions about his stepson's immigration status and that the attorney said he would not know until the immigration agency decided. Before the district court issued its opinion, Popoca-Garcia was deported. The court then denied the petition for post-conviction relief. Popoca-Garcia timely appeals.

## II.

## ANALYSIS

Popoca-Garcia argues that his trial counsel provided ineffective assistance of counsel by failing to adequately inform him of the immigration consequences of his guilty plea. In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App.

1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006).

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court determined the standard of representation required when a guilty plea could have potential immigration consequences. The Court first held that under the Sixth Amendment right to counsel, as articulated in *Strickland*, counsel may have a duty to provide advice relating to deportation. *Id.* at 366. The Court then held that "when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear." *Id.* at 369. On the other hand, when the law is less clear or uncertain "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Padilla had pled guilty to distributing drugs. Federal law required automatic deportation for any conviction relating to controlled substances other than simple possession of marijuana offenses. Thus, because on the face of the immigration law itself the federal deportation law was "succinct, clear, and explicit," Padilla's counsel had a duty to give correct advice about the immigration consequences. *Id.* at 368-69.

## A. Required Level of Advice

The district court summarized why it felt the evidentiary hearing was necessary in this case:

The Court has reviewed the transcript of the change of plea hearing. There is no question that Popoca-Garcia knew, at the time he changed his plea that it was very likely that he would be deported if he pled guilty. At the change of plea hearing, the Court put Popoca-Garcia under oath and asked him a series of questions. Defense counsel then stated "My client will most likely have some immigration consequences to this. And I've informed him of this, that this could put his permanent resident status in jeopardy, a plea to this charge, and he's understood that." The Court then asked Popoca-Garcia "Sir, do you understand that? That you could be deported because of this crime?" Popoca-Garcia answered "yes." This colloquy, standing alone, does not show that Popoca-Garcia understood that deportation was virtually certain but merely that deportation was possible. That is why the Court decided to have an evidentiary hearing on the merits of the Petition for Post-Conviction Relief.[1]

Popoca-Garcia argued that federal immigration law clearly required deportation for the offense to which he pled guilty, and the State did not disagree. In discussing the conviction and relevant federal deportation law in *Padilla*, the United States Supreme Court stated:

In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to

---

[1] The district court concluded that *Padilla v. Kentucky*, 559 U.S. 356 (2010) required unequivocal language, such that Popoca-Garcia's understanding that he was "most likely" going to be deported did not fulfill trial counsel's obligation to provide correct advice. The State did not challenge this conclusion and Popoca-Garcia assumes it is correct. Because we conclude in Part B that trial counsel met the elevated standard, which would require language that deportation was "virtually certain," we do not decide whether less certain, but still correct, language would satisfy *Padilla*. *Compare Hernandez v. State*, 124 So. 3d 757, 763 (Fla. 2012) (holding that when immigration law is truly clear that *Padilla* requires "more than equivocal advice concerning those consequences"), *Salazar v. State*, 361 S.W.3d 99, 103 (Tex. App. 2011) (holding that correct advice required informing client that "the plea of guilty would result in certain deportation" and "terms 'likelihood' and 'possibility'" were insufficient to convey the certainty of deportation), *and State v. Martinez*, 253 P.3d 445, 448 (Wash. Ct. App. 2011) (holding that merely discussing the "possibility of deportation," taken with counsel's uncertainty of immigration law, failed to adequately advise client that eligibility for deportation was certain), *with Chacon v. State*, 409 S.W.3d 529, 537 (Mo. Ct. App. 2013) (holding lower court did not clearly err in finding that counsel's advice that deportation was "very likely" was sufficient), *Com. v. Escobar*, 70 A.3d 838, 841 (Pa. Super. Ct. 2013) (holding that correct advice did not require telling client that he "definitely would be deported"), *and Neufville v. State*, 13 A.3d 607, 614 (R.I. 2011) ("Counsel is not required to inform their clients that they *will* be deported, but rather that a defendant's 'plea would make [the defendant] eligible for deportation.'" (quoting *Padilla*, 559 U.S. at 368)).

4

violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation *simply from reading the text of the statute*, which addresses *not some broad classification of crimes* but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses.

*Padilla*, 559 U.S. at 368 (emphasis added). Popoca-Garcia contends the federal law is equally clear in his case. The district court concluded that because federal law required deportation for crimes of sexual abuse of minors, trial counsel had a duty to provide correct advice. However, as shown below, that determination is not as clear as assumed.

The Immigration and Nationality Act (INA) requires deportation if the individual pleads guilty to an "aggravated felony." *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b. Aggravated felony includes "sexual abuse of a minor" as a deportable offense. 8 U.S.C. § 1101(a)(43)(A). Popoca-Garcia argues that because he pled guilty to lewd conduct with a minor under sixteen, I.C. § 18-1508,[2] he would be deported for having pled guilty to a crime constituting sexual abuse of a minor. However, the analysis of whether Popoca-Garcia's guilty plea falls within the definition of sexual abuse of a minor requires knowing what the definition of sexual abuse of a minor is, and whether I.C. § 18-1508 falls within that definition. The district court and the parties did not expressly conduct this analysis.

---

[2]  Any person who shall commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor child under the age of sixteen (16) years, including but not limited to, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the same or opposite sex, or who shall involve such minor child in any act of bestiality or sado-masochism as defined in section 18-1507, Idaho Code, when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life.

Idaho Code § 18-1508.

In a published decision, the Bureau of Immigration Appeals (BIA) adopted 18 U.S.C. § 3509(a)(8)[3] as a guide to identify the types of crimes considered to be sexual abuse of a minor. *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (BIA 1999). However, as noted by the New Jersey Superior Court Appellate Division, the BIA's "non-committal utilization of the broad concepts contained in 18 U.S.C.A. § 3509 only added further ambiguity for attorneys attempting to advise their noncitizen clients about deportation." *State v. Telford*, 22 A.3d 43, 48 (N.J. Super. Ct. App. Div. 2011) (holding that sexual abuse of minor was not sufficiently clear to require the higher standard of advice under *Padilla*). Federal circuit courts' reliance on *Rodriguez-Rodriguez* is aptly reviewed by the New Jersey court:

> Although a majority of the federal circuits considering this problem have adhered to the BIA's approach in *Rodriguez-Rodriguez*, some have done so for differing reasons. The Second, Third, Seventh, and Eleventh Circuits have applied the *Rodriguez-Rodriguez* approach because they have determined that *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694, 703 (1984), requires that they defer to the BIA's interpretation. *See James v. Mukasey*, 522 F.3d 250, 254 (2d Cir. 2008); [Stubbs v. Attorney General, 452 F.3d 251, 256 (3d Cir. 2006)]; *Gattem v. Gonzales*, 412 F.3d 758, 763 (7th Cir.2005); *Bahar v. Ashcroft*, 264 F.3d 1309, 1311 (11th Cir. 2001). The Third Circuit was less committal, only "assum[ing], without deciding, that the BIA's interpretation is permissible." *Stubbs*, *supra*, 452 F.3d at 256. And the Fifth Circuit applied the definition contained in 18 U.S.C.A. § 3509 as a result of its own interpretation rather than the BIA's. *United States v. Zavala-Sustaita*, 214 F.3d 601, 602 (5th Cir.), *cert. denied*, 531 U.S. 982, 121 S. Ct. 434, 148 L. Ed. 2d 441 (2000).

*Telford*, 22 A.3d at 48 (footnote omitted). The First Circuit seems willing to allow the BIA to rely on various federal criminal definitions including 18 U.S.C. §§ 2242-46 and 18 U.S.C. § 3509 to determine what constitutes sexual abuse of a minor. *See Emile v. I.N.S.*, 244 F.3d 183, 185-88, 186 n.2 (1st Cir. 2001) (describing the process of unlocking the meaning of sexual abuse of a minor as "routine although difficult question of statutory interpretation"). Ultimately, the First Circuit declined to hold that every crime falling under the federal definition of sexual abuse would qualify as an aggravated felony. *Id.* at 186 n.1. The Ninth Circuit has relied on the

---

[3] "[T]he term 'sexual abuse' includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children[.]" 18 U.S.C. § 3509(a)(8).

definition of sexual abuse provided in 18 U.S.C. § 2243.[4] *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1013 (9th Cir. 2009). Additionally, "a crime that is not a statutory rape crime under [18 U.S.C § 2243] may qualify as the federal generic offense of 'sexual abuse of a minor' if: (1) the conduct prohibited by the criminal statute is sexual; (2) the statute protects a minor; and (3) the statute requires abuse." *Pelayo-Garcia*, 589 F.3d at 1014.

After reviewing this split of authority as to the definition of sexual abuse of a minor, or at least what constitutes the guide to the definition, it is apparent the law is not as succinct, clear, or explicit as assumed here. Yet, this is merely step one of the analytical process in determining whether a defendant's conviction is an aggravated felony as sexual abuse of a minor. Step two involves comparing the state statute to the federal definition to determine if it falls within that definition.

For example, in *Pelayo-Garcia*, the Ninth Circuit examined whether a California statute constituted sexual abuse of a minor as an aggravated felony. The Court explained that to determine whether an offense meets the federal definition, courts use "the categorical and modified categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) and *Shepard v. United States*, 544 U.S. 13, 20-21 (2005). *Pelayo-Garcia*, 589 F.3d at 1012. "Under the categorical approach, [courts] 'compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition.'" *Id*. (quoting *Cerezo v. Mukasey*, 512 F.3d 1163, 1166 (9th Cir. 2008)). "After determining the elements of the generic federal crime of sexual abuse of a minor, the next step in the categorical approach is to identify the elements of the specific crime of conviction." *Pelayo-Garcia*, 589 F.3d at 1014. "If the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach." *Id.* (quoting *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007)).

On the other hand, "[i]f the specific crime of conviction 'does not categorically qualify as a predicate offense under a federal statute, it still may qualify under a modified categorical

---

[4]    The Ninth Circuit has identified the elements of 18 U.S.C. § 2243 as: "(1) a mens rea of 'knowingly' (as to engaging in the act); (2) a sexual act; (3) with a minor who is at least 12 but not yet 16 years of age; and (4) an age difference of at least four years between the defendant and the minor." *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1013 (9th Cir. 2009).

analysis.'" *Pelayo-Garcia*, 589 F.3d at 1016 (quoting *Quintero-Salazar*, 506 F.3d at 694). "Under the modified categorical approach, [courts] examine specified judicial records to determine whether a defendant was necessarily convicted of the elements of the federal generic crime." *Pelayo-Garcia*, 589 F.3d at 1016. The judicial records may include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* (quoting *Shepard*, 544 U.S. at 26). Once the state statute (or the defendant's specific conduct) is applied to the federal definition, an attorney then could identify if the client indeed committed sexual abuse of a minor that would constitute an aggravated battery.

Immigration law is complex. Justice Alito acknowledged this in his concurring opinion in *Padilla*, explaining:

> "Most crimes affecting immigration status are not specifically mentioned by the [Immigration and Nationality Act (INA)], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude* or *aggravated felonies*." M. Garcia & L. Eig, CRS Report for Congress, Immigration Consequences of Criminal Activity (Sept. 20, 2006) (summary) (emphasis in original). As has been widely acknowledged, determining whether a particular crime is an "aggravated felony" or a "crime involving moral turpitude [(CIMT)]" is not an easy task. *See* R. McWhirter, ABA, The Criminal Lawyer's Guide to Immigration Law: Questions and Answers 128 (2d ed. 2006) (hereinafter ABA Guidebook) ("Because of the increased complexity of aggravated felony law, this edition devotes a new [30-page] chapter to the subject"); *id.*, § 5.2, at 146 (stating that the aggravated felony list at 8 U.S.C. § 1101(a)(43) is not clear with respect to several of the listed categories, that "the term 'aggravated felonies' can include misdemeanors," and that the determination of whether a crime is an " aggravated felony" is made "even more difficult" because "several agencies and courts interpret the statute," including Immigration and Customs Enforcement, the Board of Immigration Appeals (BIA), and Federal Circuit and district courts considering immigration-law and criminal-law issues); ABA Guidebook § 4.65, at 130 ("Because nothing is ever simple with immigration law, the terms 'conviction,' 'moral turpitude,' and 'single scheme of criminal misconduct' are terms of art"); *id.*, § 4.67, at 130 ("[T]he term 'moral turpitude' evades precise definition").

*Padilla*, 559 U.S. at 377-78 (Justice Alito concurring). In response to Justice Alito's concurrence, the majority noted: "When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse

immigration consequences." *Padilla*, 559 U.S. at 369 (footnote omitted). Though the majority does not expressly mention "aggravated felonies" as one of the many scenarios given by Justice Alito, the circuit split regarding the definition of sexual abuse of a minor, and the required analysis laid out in *Pelayo-Garcia*, suggests that determining whether lewd conduct with a minor under sixteen, I.C. § 18-1508, is an aggravated felony as sexual abuse of a minor goes beyond simply reading the text of the statute. *See Padilla*, 559 U.S. at 368. Thus, because it was not explicit that I.C. § 18-1508 qualified as an aggravated felony by looking at the face of the INA, without further analysis, the standard of advice is not as clear in this case as assumed below.

**B.** **Correct Advice**

Though the question of whether Popoca-Garcia's conviction for lewd conduct with a minor under sixteen necessarily equates to "sexual abuse of a minor" for immigration law purposes is more complex than the district court and the parties assumed, the district court's findings establish that trial counsel met this heightened standard that would require correct advice. In concluding that Popoca-Garcia satisfied his duty under *Padilla*, the district court found:

> [Trial counsel] further testified that he told Popoca-Garcia that deportation **would** be a consequence of a guilty plea. This fulfilled defense counsel's obligation under *Padilla*. However, [counsel] also told Popoca-Garcia that the prosecutor had informed him that immigration services had contacted the prosecutor and said that they believed they could not deport Popoca-Garcia for the charge he pled guilty to. Finally, [he] told Popoca-Garcia that he believed the immigration service was wrong and that they could and most likely would deport him if he pled guilty. [Trial counsel] had no contact directly with immigration service but only with the prosecutor.

Thus, the district court found that trial counsel unequivocally informed Popoca-Garcia that he would be deported under federal law.

Popoca-Garcia argues that trial counsel's advice was not sufficient to clearly express that he would be deported because trial counsel also told him that immigration officials thought they could not deport him. He emphasizes language from the evidentiary hearing that trial counsel explained that immigration officials "could" deport him and that they "most likely would." Popoca-Garcia contends that these statements watered down any advice suggesting certainty of deportation satisfying *Padilla*. However, in reaching its decision the district court also explained:

9

At sentencing, [trial counsel] indicated that it was premature to say that Popoca-Garcia would be deported and the prosecutor stated that it was a certainty that Popoca-Garcia would be deported. However, what happened at sentencing is not pertinent to what happened at the change of plea hearing. By the time of sentencing, Popoca-Garcia had already knowingly and voluntarily pled guilty *with an understanding that he would be deported*. Popoca-Garcia has failed to meet the first prong of the *Strickland* test. There is insufficient evidence to show that his trial counsel provided ineffective assistance of counsel. A direct representation that the pending criminal charge would have adverse immigration consequences constitutes representation that meets an objective standard of reasonableness under *Padilla*.

(emphasis added) (footnote omitted). The court expressly found that Popoca-Garcia pled guilty understanding that he would be deported. Further, the notion that Popoca-Garcia conceivably would not be deported did not come from trial counsel, but instead came from the immigration officials through the prosecutor. Trial counsel simply passed the information along. Trial counsel expressly told Popoca-Garcia that the officials were mistaken. When viewed in context, he was confirming that Popoca-Garcia would be deported because the immigration officials could deport him and that they likely would since the law provided for it. There is substantial evidence to support the district court's finding that Popoca-Garcia pled guilty understanding that he would be deported.

Popoca-Garcia also argues that in light of his low intellectual functioning, his attorney should not have told him that immigration services believed he could not be deported. He argues that this could have led to the impression there was a chance he would not be deported. Trial counsel testified that the psychosexual evaluation revealed that Popoca-Garcia functioned at a low intellectual level; however, trial counsel also testified that he took special care to discuss the case with his client based on his level of functioning. Again, there is substantial evidence to support the district court's finding that Popoca-Garcia pled guilty with the understanding that he would be deported.

Popoca-Garcia next contends that coupling the immigration agent's comments with the later statements by trial counsel regarding his advice at the change of plea hearing and at the sentencing hearing, nullified his attorney's earlier unequivocal statement that he would be deported. Popoca-Garcia relies on *State v. Sandoval*, 249 P.3d 1015 (Wash. 2011). In that case, the Washington Supreme Court stated, "[t]he required advice [under *Padilla*] about immigration consequences would be a useless formality if, in the next breath, counsel could give the

10

noncitizen defendant the impression that he or she should disregard what counsel just said about the risk of immigration consequences." *Id.* at 1020. However, the circumstances in *Sandoval* are markedly different than the present case. In *Sandoval*, the defendant's attorney told the defendant "that he should accept the State's plea offer because he would not be immediately deported and that he would then have sufficient time to retain proper immigration counsel to ameliorate any potential immigration consequences of his guilty plea." *Id.* at 1017. The Court concluded that defendant's "counsel's advice impermissibly left [him] the impression that deportation was a remote possibility." *Id.* at 1020. Unlike *Sandoval*, trial counsel told Popoca-Garcia he would be deported and that immigration officials incorrectly believed that they could not deport him. There was nothing misleading about trial counsel's advice. As to the later statements by trial counsel, Popoca-Garcia had already pled guilty when the statements were made.[5] These later statements did not play a role in Popoca-Garcia's decision to plead guilty. Therefore, the district court correctly concluded that Popoca-Garcia failed to show his counsel was ineffective.

### III.
### CONCLUSION

Popoca-Garcia failed to establish that his attorney provided ineffective assistance of counsel. Therefore, the district court's judgment denying Popoca-Garcia's post-conviction petition is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

[5] The district court did not reach the second prong of *Strickland* that requires a showing of prejudice. However, it is clear that Popoca-Garcia would struggle to establish prejudice since he pled guilty after being expressly informed by his attorney that he would be deported.