## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 41890

| | | |
|---|---|---|
| HARIS KESEROVIC, | ) | 2015 Opinion No. 5 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 11, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge; Hon. Theresa Gardunia, Magistrate.

Decision of the district court reversing magistrate's grant of summary dismissal, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Shawna Dunn, James K. Dickinson, Special Deputy Attorneys General, Boise, for appellant. Shawna Dunn argued.

Alan Trimming, Ada County Public Defender; Kimberly J. Simmons, Abraham Wingrove, Deputy Public Defenders, Boise, for respondent. John R. Shackelford argued.

GUTIERREZ, Judge

The State appeals from the district court's order reversing the magistrate's grant of the State's motion for summary dismissal of Haris Keserovic's petition for post-conviction relief. Specifically, the State contends the district court erred by determining that Keserovic raised a genuine issue of material fact as to whether Keserovic was prejudiced by his trial counsel's incorrect advice regarding the immigration consequences of his guilty plea. For the reasons set forth below, we affirm the district court's decision reversing the magistrate's grant of summary dismissal.

1

# I.

## FACTS AND PROCEDURE

In January 2012, Keserovic, a lawful permanent resident of the United States, was arrested for stealing a purse from a grocery cart. He was charged with felony grand theft, obtained counsel, and entered a plea of not guilty. Keserovic was visited in jail by an Immigration and Customs Enforcement (ICE) officer who told Keserovic he would be deported if he was convicted of a felony offense. Keserovic relayed this information to his counsel, who advised Keserovic to accept the State's offer that he plead guilty to a reduced charge of misdemeanor petit theft, with an agreed sentence of 365 days in jail, with 305 days suspended, and two years on supervised probation. Keserovic states that counsel told him that because he was pleading to a misdemeanor, he "wouldn't have any problems with immigration" and "within sixty (60) days [he] would have [his] life back on track."

At the change of plea hearing, the prosecutor made the following statement regarding the immigration consequences of Keserovic's plea:

> [P]rior to accepting the plea of guilty, we just need to make it very clear on the record the State understands a petit theft with 365 days as being what the ICE or the federal government determines to be an aggravated felony even though it is a misdemeanor.[1] It is the State's understanding that this does subject Mr. Keserovic to deportation and so entering this plea of guilty, we just want it very clear on the record that he recognizes that it does subject him to that potential.

The magistrate asked Keserovic's counsel whether he had "that discussion" with Keserovic, to which counsel replied, "On multiple occasions, Judge. We've talked about the fact that this could raise immigration issues with regard to entering a plea in this case." The magistrate then asked Keserovic if he understood that by entering a guilty plea that it "could affect your citizenship, your application for citizenship or your ability to work in the United States?"[2] Keserovic stated that he did.

---

[1]  Pursuant to 8 U.S.C. § 1101(a)(43)(G), "a theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year" is considered an aggravated felony for the purposes of federal immigration law.

[2]  We note that the magistrate's comments regarding citizenship were of little to no import to Keserovic who, as a lawful permanent resident, was subject to entirely different procedures.

After completing the plea colloquy, the magistrate court accepted the plea and entered a judgment of conviction and sentence in accordance with the agreement. Several months later, ICE assumed custody of Keserovic and initiated deportation proceedings. Several days after being detained, Keserovic, represented by different counsel, filed a petition for post-conviction relief, contending his trial counsel rendered ineffective assistance by providing inaccurate advice regarding the immigration consequences of his guilty plea and that, had he understood the actual consequences, he would not have entered the plea. Contrary to counsel's assurance that there would not be immigration consequences since he pled guilty to a misdemeanor, Keserovic's post-conviction petition explained that his plea to what federal law considered an aggravated felony subjected him to mandatory deportation. *See* 8 U.S.C. § 1229b(a)(3) (a resident alien convicted of an aggravated felony is subject to mandatory deportation which cannot be cancelled). The consequences of the plea, he asserted in his petition, would be "virtually certain deportation." During the pendency of the post-conviction proceedings, Keserovic was deported to his home country of Bosnia-Herzegovina.

In his affidavit accompanying the post-conviction petition, Keserovic asserted that after the State's statement at the plea hearing that Keserovic's plea subjected him to possible deportation and the magistrate's indication in this regard, Keserovic asked his defense counsel if this was true, to which counsel replied, "They are just trying to scare you." An affidavit from defense counsel also accompanied Keserovic's petition. Counsel averred that he encouraged Keserovic to accept the plea and did not know (and did not advise Keserovic) at the time that the conviction would be classified as an aggravated felony, and thus subject Keserovic to near certain deportation. Counsel stated that during the change of plea hearing he recalled the prosecutor stating that Keserovic "was pleading guilty to a felony because it was a theft offense with [a] one year sentence and the court saying something about the conviction affecting his immigration status generally." Counsel recalled Keserovic turning to him after the statements were made and, although counsel did not remember exactly what Keserovic said, recalled that Keserovic "stated he did not want to plead guilty to a felony" and counsel reassured him that "he was pleading guilty to a misdemeanor, not a felony."

The State filed a motion for summary dismissal, which the magistrate granted upon determining that Keserovic could not show prejudice because any deficiency in his counsel's performance was "cured" by the State's statement at the plea hearing regarding the possible

immigration consequences. On intermediate appeal, the district court reversed the magistrate's decision, holding that neither the State's nor the magistrate's admonitions had "cured or eliminated the resulting prejudice" of counsel's incorrect advice. The State now appeals.

## II.

## ANALYSIS

The State contends the district court erred by reversing the magistrate's summary dismissal of Keserovic's claim that his trial counsel provided ineffective assistance of counsel by incorrectly informing him of the immigration consequences of his guilty plea. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or dismiss the decisions of the district court. *Id.*

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v.*

4

*State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State,* 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray*, 121 Idaho at 924-25, 828 P.2d at 1329-30. To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho

5

758, 760, 760 P.2d 1174, 1176 (1988). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006).

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court determined the standard of representation required when a guilty plea could have potential immigration consequences. The Court first held that under the Sixth Amendment right to counsel, as articulated in *Strickland*, counsel has a duty to provide advice, to varying degrees, relating to deportation. *Id*. at 366. The Court then held that "when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear." *Id*. at 369. On the other hand, when the law is less clear or uncertain "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*.; *see also Popoca-Garcia v. State*, 157 Idaho 150, 152, 334 P.3d 824, 826 (Ct. App. 2014). In order to obtain relief, a petitioner must show that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 559 U.S. at 372.

In its decision reversing the magistrate's grant of the State's motion for summary dismissal, the district court first noted that under the *Padilla* rubric, this was a situation where the immigration consequences of the guilty plea were clear, and therefore counsel's failure to correctly advise Keserovic constituted deficient performance. The district court then determined that neither the State's nor the court's admonitions regarding immigration consequences at the change of plea hearing "cured or eliminated the resulting prejudice" because neither the State nor the court informed him that deportation was *mandatory* as required under *Padilla* in cases where the immigration consequences are clear.

On appeal, the State argues that Keserovic cannot establish prejudice from counsel's deficient performance for two reasons. First, the State argues that Keserovic cannot show that a decision to reject the plea bargain would have been rational under the circumstances because Keserovic benefited from a favorable plea offer given the overwhelming evidence of his guilt.[3]

---

[3] The record indicates there was surveillance video of the incident and Keserovic's counsel admitted that the person seen on the video taking the purse looked "exactly" like Keserovic.

Therefore, the State contends, rejecting the offer to plead to a misdemeanor and avoid significant prison time would not have been rational even had counsel given him accurate advice. Second, the State asserts that Keserovic cannot show prejudice because, despite counsel's deficient performance, he was given accurate and sufficient information by the State and magistrate as to the possible immigration consequences.

We easily dispose of the former argument. Given Keserovic's asserted desire to avoid deportation and the virtual certainty that Keserovic would be deported if he entered the guilty plea (a point which the State does not dispute and which was borne out given the fact that Keserovic was quickly apprehended by ICE and ultimately deported), pleading guilty to avoid additional incarceration was of little to no benefit to Keserovic.[4] Even accepting as true the State's assertion that the evidence of Keserovic's guilt was overwhelming, it may well have been in Keserovic's better interests to take his chances at trial and/or to pursue a plea agreement of even one less day of imprisonment so as not to trigger the immigration consequences applicable to aggravated felonies. *Accord Padilla*, 559 U.S. at 368 ("We too have previously recognized that preserving the client's right to remain in the United States may be more important to the client that any potential jail sentence. . . . [And] preserving the possibility of discretionary relief from deportation . . . would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." (internal quotation marks and citations omitted)); *State v. Sandoval*, 249 P.3d 1015, 1022 (Wash. 2011) (noting, in finding counsel's deficient performance in informing the defendant of immigration consequences was prejudicial, that although the defendant would have risked a longer prison term by going to trial, the deportation consequence of his guilty plea is also "a particularly severe 'penalty'" that can mean "banishment or exile" and "separation from . . . families" (citations omitted)). Keserovic need only show there was a genuine issue of material fact as to whether it would have been rational for him to reject the plea agreement; he did so here.

Next, we address the State's argument that statements by the prosecutor and magistrate before the entry of the plea cured defense counsel's incorrect advice. In support of this argument, the State cites to cases where this Court and our Supreme Court have held that a

---

[4]     Keserovic's post-conviction petition noted that Keserovic had come to the United States lawfully as a child and it was the only home he had known. He is also the father of a citizen child, who was four years old at the time.

court's notice to a defendant of certain rights and consequences may compensate for defense counsel's deficient performance in failing to provide such notice to his client prior to entry of a guilty plea. For example, in *Murray v. State*, 156 Idaho 159, 168, 321 P.3d 709, 718 (2014), the Supreme Court held that although counsel was objectively deficient for failing to advise Murray of his Fifth Amendment right to refuse to participate in a psychosexual evaluation, he could not show prejudice because the district court fully informed him of the right prior to entry of his guilty plea. Similarly, in *Grant v. State*, 156 Idaho 598, 605, 329 P.3d 380, 387 (Ct. App. 2014), this Court held that even assuming that Grant's attorney failed to advise him of his right to refuse to participate in the psychological evaluation, Grant failed to allege how he was prejudiced given that he was informed via the guilty plea advisory forms of this right.

The circumstances in this case are distinguishable. Here, it was not simply a matter of counsel failing to give the requisite advisory; rather, the affidavits included with Keserovic's petition state that counsel affirmatively and repeatedly gave Keserovic incorrect advice regarding possible immigration consequences, including directly contradicting the prosecutor's allegedly curative statement at the change of plea hearing and affirmatively assuring Keserovic there would be no adverse immigration consequences. Further, the magistrate's questioning of Keserovic as to whether he knew the plea could affect his "citizenship, [his] application for citizenship or [his] ability to work in the United States" conveyed little to no relevant information to Keserovic who was concerned with maintaining his lawful permanent residency, not applying for citizenship. To hold under these circumstances that the statements of the prosecutor and the court cured counsel's deficiency would penalize Keserovic's reliance on his counsel's explicit advice. And by requiring that Keserovic give greater credence to the prosecutor's advice than that of his own attorney, it would effectively obliterate his right to effective assistance of counsel.[5]

The district court did not err by determining that, viewing the facts in the light most favorable to Keserovic, neither the State's nor the magistrate's statements to Keserovic cured the

---

[5] Like the district court, we do not go so far as to adopt Keserovic's contention that statements from a prosecutor or court may *never* cure trial counsel's incorrect advice or failure to give the requisite advice. That is an issue left for another case. Nor do we reach the issue of whether the statements by the prosecutor amounted to the heightened level of advice required under *Padilla* where the immigration consequences are clear. *See Popoca-Garcia v. State*, 157 Idaho 150, 152, 334 P.3d 824, 826 (Ct. App. 2014).

objective deficiency of his counsel's performance, and therefore that Keserovic presented a genuine issue of material fact as to whether he was prejudiced by counsel's deficient performance. The district court's decision that the magistrate erred by granting the State's motion for summary dismissal is affirmed.

Chief Judge MELANSON and Judge LANSING, **CONCUR**.