IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35021

| | | |
|---|---|---|
| PAUL RHOADES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, September 2009 Term |
| | ) | |
| v. | ) | 2009 Opinion No. 134 |
| | ) | |
| STATE OF IDAHO, and TOM | ) | Filed: October 26, 2009 |
| BEAUCLAIR, Director, Idaho Department | ) | |
| of Correction, and GREG FISHER, Warden, | ) | Stephen Kenyon, Clerk |
| Idaho Maximum Security Institution, | ) | |
| | ) | |
| Respondents. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The decision of the district court is affirmed.

Federal Defender Services of Idaho, Boise, and Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Oliver Loewy argued. Dennis Benjamin appeared.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Lamont Anderson argued.

---

HORTON, Justice

Petitioner Paul Ezra Rhoades appeals the district court's summary dismissal of his petition for post-conviction relief. He argues that the district court erred in finding that his claims are time-barred under I.C. § 19-4902.

In 1987, Rhoades entered a conditional plea of guilty for the murder and robbery of Nolan Haddon. In 2005, Rhoades petitioned the district court for post-conviction relief alleging prosecutorial misconduct, actual innocence, ineffective assistance of counsel, and seeking to test biological evidence for DNA. The district court found that these claims were not raised in a timely manner and summarily dismissed the petition pursuant to I.C. § 19-4906.

Three main issues are presented on appeal: First, whether the grounds raised by Rhoades allow for equitable tolling of the limitation provided by I.C. § 19-4902; second, for grounds that

1

would entitle him to equitable tolling, whether Rhoades has met his burden of pleading facts that would entitle him to that equitable tolling; and finally, whether this appeal was frivolous and whether, as a result, the state is entitled to an award of attorney fees. We affirm and award costs to the state.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Paul Ezra Rhoades was charged with the rape and murder of Susan Michelbacher as well as the murder and robbery of Nolan Haddon. Rhoades pleaded not guilty to all charges and filed a motion to sever the charges, which was subsequently granted. Rhoades was tried, convicted, and sentenced to death on the charges relating to the Michelbacher rape and murder. The parties subsequently entered into a plea agreement relating to the Haddon murder/robbery wherein Rhoades entered an "*Alford*"[1] plea, maintaining his innocence in the case but conceding that "a conviction may be had on the charges as presently filed." Rhoades was sentenced to serve concurrent indeterminate life sentences for the Haddon murder and robbery.

The evidence that would have been introduced at a trial for the Haddon murder included the gun used to kill Haddon found in the vicinity of a green car abandoned by Rhoades, statements made by Rhoades at the time of his arrest, and statements allegedly made to a jailhouse informer. *State v. Rhoades*, 119 Idaho 594, 600-604, 809 P.2d 455, 461-465 (1991). Further evidence would have included witness testimony placing a car matching the description of the car in which Rhoades was found at the scene of the Haddon murder, law enforcement officers' testimony that items found in Rhoades' possession were similar to the items taken at the time of the Haddon robbery, and testimony regarding Rhoades' purchase of bullets matching the caliber of those used in Haddon's murder. The gun is notable in the present case as the same gun was presented as the murder weapon in the case relating to the rape and murder of Susan Michelbacher. Based upon an affidavit of Dr. Greg Hampikian, Rhoades now claims that PGM (phosphoglucomutase enzyme) testing conducted by the FBI prior to the trial exonerates him of the Michelbacher murder and, by virtue of that exoneration, the Haddon murder as well.

In 2005, Rhoades filed the present petition for post-conviction relief, alleging prosecutorial misconduct, actual innocence, ineffective assistance of counsel, and requesting

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

DNA testing. These were similar to the 2002 petition and 2005 amendments to the petition for post-conviction relief made in connection with the Michelbacher case.

The state moved for summary dismissal of Rhoades' claims on August 24, 2007, claiming that Rhoades' claims were time-barred by I.C. § 19-4902. On November 26, 2007, the district court granted the motion to dismiss. Rhoades appeals that decision.

## II. STANDARD OF REVIEW

Post-conviction proceedings are governed by I.C. § 19-4901 *et seq.* (the Uniform Post-Conviction Procedure Act). A petition for post-conviction relief is a civil proceeding, governed by the Idaho Rules of Civil Procedure. *Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). However, "[t]he 'application must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1).'" *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008) (quoting *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002)). Instead, the application must be supported by a statement that "specifically set[s] forth the grounds upon which the application is based." *Payne,* 146 Idaho at 561, 199 P.3d at 136 (citing I.C. § 19-4903). "The application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal." *Id*.

This Court has free review of questions of law. *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007). On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court determines whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file and will liberally construe the facts and reasonable inferences in favor of the non-moving party. *Hauschulz v. State*, 144 Idaho 834, 838, 172 P.3d 1109, 1113 (2007) (citing *Gilpin-Grubb v. State*, 138 Idaho 76, 80, 57 P.3d 787, 791 (2002)). However, "while the underlying facts must be regarded as true, the petitioner's conclusions need not be so accepted." *Phillips v. State*, 108 Idaho 405, 407, 700 P.2d 27, 29 (1985). "[W]here the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). These standards apply equally to questions regarding the accrual of actions and the

passage of the statute of limitations. *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 405, 210 P.3d 86, 90 (2009).

### III.    ANALYSIS

**1.    Rhoades did not plead facts sufficient to trigger equitable tolling and avoid summary dismissal.**

The Uniform Post-Conviction Procedure Act provides three separate limitations periods. The first, contained in I.C. § 19-4902(a), states that "[a]n application may be filed at any time within one (1) year from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." The second, addressing only DNA testing, is contained in I.C. § 19-4902(b). It states that a "petition must be filed by July 1, 2002, or within one (1) year after the filing of the judgment of conviction, whichever is later." I.C. § 19-4902(b).    Finally, I.C. § 19-4908 states that a court may grant a supplemental or additional petition where the "court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application."

The state, the trial judge and Rhoades all agree that the standards required for I.C. § 19-4902 have not been met.    Remittitur in Rhoades' case was issued March 8, 1991.    In 1993, the period designated in I.C. § 19-4902, previously a five-year period, was amended to a one-year limitation period.    1993 Idaho Sess. Laws, ch. 265, § 1, p. 898.    Dating the one-year period from the July 1, 1993 amendment to I.C. § 19-4902, the petition was untimely under I.C. § 19-4902, as the present motion was filed on July 29, 2005. *Esquivel v. State*, 128 Idaho 390, 392, 913 P.2d 1160, 1162 (1996).    Rhoades does not dispute this but argues that he is entitled to equitable tolling by operation of I.C. §§ 19-4901 and 19-4908.[2]

In *Charboneau v. State*, we considered the relationship of I.C § 19-4902 and I.C. § 19-4908.    144 Idaho 900, 174 P.3d 870 (2007).    In *Charboneau*, this Court recognized that rigid application of I.C. § 19-4902 would preclude courts from considering "claims which simply are

---

[2]    Rhoades cites I.C. § 19-4901(b) for the proposition that "a successive postconviction petition is timely if (1) it was not reasonable to expect the petitioner to have known of its underlying facts at the time of his first petition and (2) if the successor petition was filed within a reasonable amount of time of his discovering the underlying facts." I.C. § 19-4901(b), however, does not address when or whether specific facts may overcome the one-year statute of limitations for post-conviction petitions. Rather, I.C. § 19-4901 merely addresses the relation between issues that might have been raised on direct appeal and issues raised in a petition for post-conviction relief.

not known to the defendant within the time limit, yet raise important due process issues." *Id.* at 904, 174 P.3d at 874. According to this Court's decision in *State v. Rhoades*,

> [p]rocedural due process issues are raised whenever a person risks being deprived of life, liberty, or property interests because of governmental action. The requirement is that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard.

120 Idaho 795, 806, 820 P.2d 665, 676 (1991). The Court then used the three-part balancing test enunciated by the U.S. Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976), to determine whether due process had been afforded, balancing (1) the interest at stake; (2) the risk of erroneous deprivation of the interest and the probable value of additional or substitute safeguards; and (3) the government's interest. *Rhoades,* 120 Idaho at 806-07, 820 P.2d at 676-77.

In *Charboneau*, we noted that, in instances of a *Brady* violation,[3] "there may be a tolling of the one year statute of limitations until discovery of the *Brady* violation." *Charboneau,* 144 Idaho at 904, 174 P.3d at 874. The Court applied the same "reasonable time" standard that governs its examination of post-conviction petitions in capital cases. *Id.* at 905, 174 P.3d at 875. For claims that do not meet the required timeliness standard, a petitioner "shall be deemed to have waived such claims for relief as were known or reasonably should have been known." I.C. § 19-2719. "In determining what a reasonable time is for filing a successive petition, we will simply consider it on a case-by-case basis, as has been done in capital cases." *Charboneau*, 144 Idaho at 905, 174 P.3d at 875.

The district court, in finding that Rhoades was not entitled to equitable tolling, cited the court of appeals' decision in *Chico-Rodriguez v. State* for the proposition that "the bar for equitable tolling in post-conviction actions is high." 141 Idaho 579, 582, 114 P.3d 137, 140 (Ct. App. 2005). The Idaho Court of Appeals has recognized instances of equitable tolling "(1) where the petitioner was incarcerated in an out-of-state facility on an in-state conviction without legal representation or access to Idaho legal materials; (2) and where mental disease and/or psychotropic medication renders a petitioner incompetent and prevents petitioner from earlier pursuing challenges to his conviction." *Sayas v. State*, 139 Idaho 957, 960, 88 P.3d 776, 779 (Ct. App. 2003). This Court has never explicitly addressed when a case would raise an

---

[3]   *Brady v. Maryland*, 373 U.S. 83 (1963).

important due process issue. However, the serious due process concerns enunciated in *Charboneau* encompass cases involving access to courts claims. *Martinez v. State*, 130 Idaho 530, 535-36, 944 P.2d 127, 132-33 (Ct. App. 1997). It would similarly cover claims of incompetency. *Chico-Rodriguez*, 141 Idaho at 582-83, 114 P.3d at 140-41. We therefore reaffirm the standard expressed in *Charboneau* in order to determine whether equitable tolling is appropriate.

Applying this structure, the first question is whether Rhoades' asserted claims (prosecutorial misconduct, actual innocence, ineffective assistance of counsel, and a request for DNA testing) "raise important due process issues" sufficient to trigger equitable tolling. The second question is whether any claims that would be entitled to equitable tolling have been adequately supported by the facts and claims in the pleadings.

### a. Prosecutorial Misconduct

With regard to the allegations of prosecutorial misconduct, *Charboneau* answers the first question in the affirmative, citing claims of "state misconduct" involved in a *Brady* violation. *Charboneau*, 144 Idaho at 904, 174 P.3d at 874. While it must still be pursued in a timely fashion, state misconduct implicates core due process considerations that may trigger equitable tolling. The district court acknowledged this, stating that "there is no doubt but that deliberate deception in a criminal prosecution would likely entitle a petitioner to equitable tolling for I.C. § 19-4902 purposes." The court then rejected the prosecutorial misconduct argument as unsupported by the facts alleged.

Rhoades identifies four pieces of evidence in support of his claim that prosecutorial misconduct occurred. First, Rhoades refers to the existence of the FBI document recounting the results of PGM testing upon which Dr. Hampikian relied. Second, Rhoades relies on Dr. Hampikian's affidavit stating that the FBI tests excluded Rhoades as a contributor of the semen that was the subject of the FBI's PGM testing. Third, Rhoades cites testimony at the Michelbacher trial by Don Wyckoff, the state's expert witness, that he could not address the results of the FBI tests because he did not do the analysis. Finally, Rhoades refers to statements by the prosecutor in the closing arguments of the Michelbacher trial that Rhoades "alone of the persons who had access, matches" the semen samples found.

While facts supported by admissible evidence must be accepted, the judge reviewing those facts need not draw inferences drawn from those facts that are not supported by the

6

evidence. *Hauschulz v. State*, 144 Idaho 834, 838, 172 P.3d 1109, 1113 (2007). Rhoades is correct in asserting that Mr. Wyckoff, the state's expert, would be considered an agent of the prosecution for purposes of *Brady* disclosures. *State v. Avelar*, 132 Idaho 775, 781, 979 P.2d 648, 654 (1999) ("The duty of disclosure enunciated in *Brady* is an obligation of not just the individual prosecutor assigned to the case, but of all the government agents having a significant role in investigating and prosecuting the offense.") (internal quotations omitted). Rhoades' argument relies on Wyckoff's role as state agent, combined with the apparently obvious import of the PGM testing and the fact that the PGM report had been made available to the state.

Nevertheless, even assuming these facts, Rhoades effectively asked the district court to make, not one, but four inferences in his favor. One must first infer from the mailing of the FBI report to the state investigatory office that Wyckoff received the report.[4] Second, one must infer that Wyckoff actually reviewed the report. Third, one must further infer that Wyckoff interpreted the report and reached the same conclusion as Rhoades' expert. Finally, in order to show that the prosecutor suborned perjury, one must further infer that Wyckoff shared the exculpatory interpretation of the FBI report with the prosecutor. Although the district court is required to draw inferences in favor of the non-moving party, those inferences must be reasonable. The required series of inferences here simply does not meet the reasonableness standard. Whether by virtue of oversight, misunderstanding the data, or, as the district court suggested, simply a different interpretation, there are a variety of explanations which are equally, if not more plausible than one of deliberate concealment.[5]

Nor does *Banks v. Dretke*, upon which Rhoades relies, suggest a different result. 540 U.S. 668 (2004). *Banks* involved a case in which the prosecution had asserted that it had turned over all material required by *Brady* but had, in fact, failed to disclose information known to the state. Although Rhoades argues that "concealment and misrepresentation" has occurred here, he acknowledges that "the prosecution did provide defense counsel with a copy of the FBI's PGM test results." We conclude that the district court did not err in finding that Rhoades failed to plead facts adequate to support his claim of prosecutorial misconduct and dismissing this claim.

     *b.*     *Actual Innocence*

---

[4]     The FBI report was directed to "Ms. Pamela J. Marcum, Senior Criminalist."

[5]     The FBI report was disclosed to Rhoades' attorney who had the assistance of a court-appointed expert. Rhoades' claims of a *Brady* violation and subornation of perjury are based upon the facially exculpatory value of the report. Rhoades does not explain why the state would suborn perjury when evidence of such exculpatory import had been disclosed to the defense.

Rhoades argues that *Sivak v. State* supports his argument that a claim of actual innocence provides a basis for equitable tolling. 134 Idaho 641, 8 P.3d 636 (2000). However, Sivak, unlike Rhoades, was making a claim of actual innocence to support overriding a time-bar and reach the merits of an otherwise-barred constitutional claim. *Id.* at 644, 8 P.3d at 639 ("[Sivak] asserted that the state denied his due process rights by withholding evidence of an agreement between Leytham and the prosecution."). We need not and do not decide today whether due process requires a free-standing actual innocence exception to the application of I.C. § 19-4902.

Even if actual innocence provides a basis for equitable tolling, the facts alleged by Rhoades do not establish a prima facie case of actual innocence. Under the standard for "actual innocence" as enunciated by the U.S. Supreme Court in *Schlup v. Delo,* "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." 513 U.S. 298, 327 (1995). As the state correctly observes, even if the results of the FBI's PGM tests were accepted as unambiguously exculpating Rhoades of responsibility for the rape and murder of Michelbacher, that does not mean that Rhoades did not murder Haddon. Rhoades alleges facts only related to the Michelbacher case, not the Haddon charges. In light of the facts set forth in Part I of this opinion *supra*, that link Rhoades to the murder of Mr. Haddon, and given that there is no suggestion that the PGM tests would have been part of the Haddon prosecution, we conclude that Rhoades has failed to establish a prima facie case of actual innocence and this claim was properly dismissed as untimely.

### c. *Ineffective Assistance of Counsel*

We have repeatedly held that ineffective assistance of counsel claims can or should be known after trial. In addressing one of Rhoades' previous appeals, we squarely addressed this issue. "Ineffective assistance of counsel is one of those claims that should be reasonably known immediately upon the completion of the trial and can be raised in a post-conviction petition." *Rhoades*, 120 Idaho at 807, 820 P.2d at 677. The facts of the case, being particularly within the knowledge of the defendant should be sufficient to alert a defendant to the presence of ineffective assistance of counsel. In this case, Rhoades had access to the material related to his case, including the PGM testing results. Rhoades has further alleged that he is innocent. Assuming his claim of innocence to be true, even if Rhoades did not know that the PGM testing exculpated him, he would have been on notice that it may have done so. Accordingly, we conclude that the district court properly dismissed this claim as untimely.

*d.* *Requests for DNA Testing under I.C. § 19-4902(b)*

Rhoades has not argued that the district court's finding that his claim was brought outside of the July 1, 2002 limit created by I.C. § 19-4902(b) was incorrect. Rather, Rhoades simply argues that "he should be allowed to conduct deoxyribonucleic acid ("DNA") testing on any and all biological evidence collected by the state in the investigation of the murder which gave rise to the instant case." The U.S. Supreme Court recently rejected the argument that the due process clause provides a freestanding right to DNA testing. *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. ___ , 129 S.Ct. 2308 (2009). "In due process cases involving the deprivation of a liberty interest, this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution, to art. I, § 13 of the Idaho Constitution." *Smith v. Idaho Dep't of Corr.*, 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996). Therefore, we conclude that the denial of DNA testing does not implicate a specific due process concern. Accordingly, we affirm the district court's conclusion that Rhoades' claim for DNA testing was time-barred.

**2. We will not award the state attorney fees under I.C. § 12-121; however, we award costs to the state under I.A.R. 40.**

The state requests an award of costs and attorney fees incurred in connection with this appeal. The request for attorney fees is based upon I.C. § 12-121. "Reasonable attorney's fees will only be awarded to the prevailing party under I.C. § 12-121 when the court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956, 962 (1995) (internal quotation omitted). We conclude that Rhoades' arguments, although unsuccessful, are not so wholly without merit as to warrant an award of fees. As discussed above, the standard for equitable tolling has never been clearly spelled out and its application to many of the issues raised by Rhoades is a matter of first impression for this Court.

Idaho Appellate Rule 40 provides that "[c]osts shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." As a petition for post-conviction relief is a civil matter and because the state is the prevailing party on appeal, we award costs to the state.

## IV.  CONCLUSION

We affirm the district court's dismissal of Rhoades' petition for post-conviction relief as Rhoades' prosecutorial misconduct claims are unsupported by the facts presented and Rhoades' alternative grounds are time-barred under I.C. § 19-4202(a) and (b).  Costs to the state.

Chief Justice EISMANN, Justices BURDICK, W. JONES and Justice Pro Tem WALTERS **CONCUR**.