# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48108

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL CANGRO, | ) | |
| | ) | Filed: June 4, 2021 |
| Petitioner-Appellant, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgment summarily granting in part, and dismissing in part, petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Dennis Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Christopher Michael Cangro appeals from the district court's judgment summarily granting in part, and dismissing in part, his petition for post-conviction relief. Cangro asserts the district court erred in summarily dismissing in part Cangro's claim that he received ineffective assistance of counsel based on his trial counsel's failure to impeach a witness. Because Cangro did not raise a genuine issue of material fact, the district court's judgment is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At around 12:45 a.m. on July 22, 2017, Deputy Cody Hickam was on patrol in Kuna when he noticed Cangro driving a motorcycle. Deputy Hickam saw Cangro swerve back and forth, fail to signal before turning, and fail to come to a complete stop at a stop sign. Deputy Hickam followed Cangro as he accelerated to a speed of forty-eight miles per hour in a twenty-five mile

1

per hour zone. As Cangro approached an intersection, Deputy Hickam turned on his patrol lights to stop Cangro. Rather than stopping, Cangro continued through the intersection and accelerated to a speed of about eighty miles per hour. The road came to a dead end, and Cangro veered off the road onto the dirt and around a road sign before turning onto another street. As Cangro turned onto the other street, Deputy Hickam saw the back tire of Cangro's motorcycle slip, nearly causing Cangro to crash. Worried that Cangro would endanger himself, Deputy Hickam turned off the lights on his patrol car and ended his pursuit.

Deputy Hickam contacted additional officers, who were given Cangro's home address and arrested Cangro at his home shortly thereafter. Deputy Hickam assisted one of the arresting officers with transporting Cangro to the jail. Deputy Hickam testified that he distinctly remembered an overwhelming smell of alcohol coming from the backseat of the police car where Cangro was seated. When Cangro arrived at the jail, he refused to participate in field sobriety testing or provide a breath sample.

The State charged Cangro with felony eluding a peace officer and misdemeanor driving under the influence, a second offense within ten years (DUI). Cangro entered a not guilty plea, and the case proceeded to trial. At trial, the State called Tambra Prindle to testify. Prindle testified that on the night of July 21, 2017, she was bartending at the Longhorn Saloon in Kuna. Prindle saw Cangro in the bar that night from approximately 9:30 p.m. to 10:30 p.m. She recalled serving Cangro one beer, and she did not know if he finished the beer before he left the bar.

Cangro testified that he was diagnosed with Type II diabetes and that due to his condition, he does not drink when he rides his motorcycle or when he drives. Cangro said that he only drank half of the beer he was served by Prindle and that he did not drink any other alcohol that night. Cangro also testified that he had just left the Longhorn Saloon when he noticed a car behind him.

During closing argument, the State alluded to its theory that after Cangro left the Longhorn Saloon at 10:30 p.m., he continued to consume alcohol elsewhere before he was seen by Deputy Hickam at 12:45 a.m. The State argued:

> Ms. Prindle, an uninterested witness, she doesn't have a dog in this fight, so to speak, testified that Mr. Cangro left the Longhorn between 10:30 and 11:00. . . .
> So we've got no testimony between about 11:00 and 12:45. That's almost two hours unaccounted for. What could [Cangro] have done during that two hours, especially if he usually has a rule that he doesn't drink because of his diabetes and a rule that he never drinks and drives. But he had already broken that rule.

2

A jury found Cangro guilty of both counts. For felony eluding a peace officer, the district court sentenced Cangro to a unified term of incarceration of five years, with two years determinate, suspended the sentence, and placed Cangro on probation for four years. For misdemeanor driving under the influence (DUI), the district court sentenced Cangro to thirty days jail.

Cangro timely filed a petition for post-conviction relief, claiming that his trial counsel was ineffective for failing to confront Prindle with a prior inconsistent statement. In discovery, the State disclosed two interviews with Prindle--an interview from the night of the incident in which she estimated Cangro left the Longhorn Saloon around 12:30-12:45 a.m. and a later interview in which she recalled Cangro leaving around 10:30 p.m. Cangro moved for summary disposition of his petition in his favor, arguing that trial counsel was ineffective by failing to impeach Prindle because her impeachment would have refuted the State's theories that Cangro was drinking elsewhere after he left the Longhorn and that he eluded Deputy Hickam to avoid getting caught driving under the influence. Cangro also submitted an affidavit from trial counsel stating that counsel was aware of Prindle's prior inconsistent statement and failed to impeach her with that statement, the failure to impeach was not a strategic or tactical decision, and the failure to impeach was prejudicial to Cangro's defense. In response, the State moved for summary dismissal of Cangro's petition.

The district court held a hearing on the motions. With respect to the DUI, the district court found that trial counsel was deficient for failing to impeach Prindle with her prior inconsistent statement. The district court also found that Cangro was prejudiced by the deficiency because the impeachment evidence at issue went directly to a significant timeframe in the State's case. The district court granted Cangro's motion for summary disposition, thereby denying the State's motion for summary disposition on the DUI charge. With respect to the felony eluding, the district court found that the failure to impeach Prindle was not deficient because Prindle's conflicting statements were factually unrelated to the eluding charge. Thus, the district court granted the State's motion for summary disposition and denied Cangro's motion for summary disposition on the eluding charge.

The district court entered judgment vacating Cangro's DUI conviction and denying his petition for post-conviction relief with respect to his eluding conviction. Cangro timely appeals.

3

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

4

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (2008). Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Cangro argues the district court erred by granting the State's motion for summary dismissal and denying his motion for summary disposition with respect to his felony eluding charge because trial counsel's failure to impeach Prindle was deficient and prejudicial with respect to the eluding charge. Cangro contends that trial counsel's failure to impeach Prindle was deficient performance because Prindle's impeachment would have rebutted the State's theory that Cangro eluded Deputy Hickam to avoid getting a DUI. The prejudice, according to Cangro, is that the State's evidence on the eluding charge was weak, thus making the credibility of the witnesses of critical importance. Had Prindle been impeached, Cangro would not have a motive of avoiding a DUI charge and his version of the events would have been more credible, thus leading to the reasonable probability of a different outcome. In response, the State asserts that because it did not need to prove motive beyond a reasonable doubt, impeachment of Prindle's testimony would not have impacted the State's eluding case and, therefore, the district court did not err in dismissing Cangro's petition for post-conviction relief with respect to the eluding conviction.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial

5

would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231.

In his petition, Cangro alleged that trial counsel's failure to impeach Prindle was ineffective with regard to the eluding charge because "without the DUI, there is no reason for Mr. Cangro to elude and his testimony that he did not notice the officer's lights would have been believed by the jury." The district court found that:

> The factual issue in contention at trial was whether Petitioner willfully fled the police based on his testimony that he did not see the overhead lights on the police vehicle. With respect to the two-part *Strickland* test, the Court cannot find that the first prong of the test is satisfied, as Ms. Prindle's testimony concerning Petitioner's whereabouts prior to his encounter with the police and subsequent attempt to elude are unrelated factually. Further, the Court cannot find that the second prong of the *Strickland* test is satisfied as there is no reasonable probability that the outcome of the felony eluding charge would have been different.

On appeal, Cangro and the State correctly agree that motive is not an element of the crime of eluding. *See Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008) ("Motive is not an essential element of any crime unless it is made so by statute."). Idaho Code § 49-1404(1) defines the crime of fleeing or attempting to elude a peace officer and provides, in part:

> Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor. The signal given by a peace officer may be by emergency lights or siren.

Idaho Code § 49-1404(2) further states that:

> (2)  An operator who violates the provisions of subsection (1) and while so doing:
> (a) Travels in excess of thirty (30) miles per hour above the posted speed limit;
> (b) Causes damage to the property of another or bodily injury to another;
> (c) Drives his vehicle in a manner as to endanger or likely to endanger the property of another or the person of another; or
> (d) Leaves the state; is guilty of a felony.

Although motive is not an element of eluding, Cangro argues that whether or not he had a reason to elude Deputy Hickam was the determinative factor in establishing that he acted willfully. Cangro contends that without the State's asserted motive to elude--that Cangro was attempting to avoid a DUI--the State could not prove that he acted on purpose to evade Deputy Hickam. We disagree.

6

The jury was instructed that in order for Cangro to be guilty of eluding, the State was required to prove beyond a reasonable doubt that: while driving a motor vehicle; Cangro willfully fled or attempted to elude a pursing police vehicle; when a peace officer had given Cangro a visual or audible signal to bring Cangro's vehicle to a stop; and traveled in excess of thirty miles per hour above the posted speed limit. The district court further instructed the jury: "An act is 'willful' or done 'willfully' when done on purpose. One can act willfully without intending to violate the law, or injure another, or acquire any advantage."

Testimony at trial established that after observing Cangro driving erratically, Deputy Hickam activated his patrol lights and attempted to initiate a traffic stop. Rather than pulling over to the side of the road, Cangro immediately accelerated to approximately eighty miles per hour. Deputy Hickam testified that he activated his emergency lights when he was about twenty yards behind Cangro. Deputy Hickam activated his overhead patrol lights to the highest setting, as well as the red and blue lights on the vehicle brush guard, rear lights, and "wigwag lights, which is where [the] headlights alternate between brights and on, brights and off . . . and per Idaho Code that has to be visible within a thousand feet."

Deputy Hickam further testified that it was a dark, clear, summer night, and there was nothing obstructing his view of Cangro or Cangro's view of him. Deputy Hickam acknowledged that in his initial police report he said he was unsure if Cangro saw his emergency lights. Deputy Hickam explained that while he could not be sure if Cangro initially saw the lights, Deputy Hickman assumed Cangro saw the emergency lights because immediately after the lights were activated, Cangro's "behavior changed." For example, Cangro accelerated to more than eighty miles per hour, which was close to double Cangro's previous speed. Cangro's driving pattern also changed.

Cangro admitted that he saw a car driving behind him, and that he intentionally accelerated "to get away." Cangro testified that he saw only the headlights on the car behind him, which was Deputy Hickam's car, but did not see any overhead police lights. Cangro further testified that he was "doing everything in [his] power to get away" from the car behind him.

Beginning with the first prong of the *Strickland* analysis, the district court correctly concluded that trial counsel's failure to impeach Prindle was not deficient performance in relation to the eluding charge. Cangro asserts that because Prindle's testimony was central to the DUI

charge and the State argued that Cangro may have been eluding for fear of being charged with a DUI, Prindle's testimony was central to the eluding charge. We disagree.

Cangro argues that aside from the State's assertion at trial that Cangro had a motive to elude Deputy Hickam, the State's evidence on the eluding charge was weak, thus the failure to impeach Prindle had a significant impact on the jury's determination. This argument is unpersuasive, as Cangro admitted all but the willful element of the felony eluding charge. The only factual issue for the jury to determine was whether Cangro saw the overhead lights and knew the car behind him was law enforcement.

Deputy Hickam testified that immediately after he activated his emergency lights, Cangro's driving pattern became different, indicating to Deputy Hickman that Cangro saw the police lights. Cangro testified that although he saw the headlights of the vehicle behind him, he did not see any police emergency lights and he did everything he could to elude the car behind him. Prindle's testimony was factually unrelated to whether Cangro saw the overhead lights and, thus, knew the car behind him was law enforcement.

Moreover, the State mentioned the DUI as a possible motive for eluding only once and that specific mention was during closing argument. Fear of being charged with a DUI is only one reason Cangro may have eluded Deputy Hickam. Regardless, Cangro's reason for eluding Deputy Hickam is wholly irrelevant. As Cangro admits, motive is not an element of eluding. Accordingly, trial counsel's failure to impeach Prindle did not fall below an objective standard of reasonableness.

Even if trial counsel's failure to impeach Prindle was deficient, Cangro has not established a reasonable probability that the outcome of the eluding charge would have been different if trial counsel had impeached Prindle. To demonstrate prejudice, the appellant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). To undermine confidence in the outcome "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id.*

To the extent that Deputy Hickam and Cangro's testimony was contradictory, the credibility of each witness was for the jury to decide. We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and

8

the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991); *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). In this case, for the eluding charge, the jury weighed Cangro's testimony against the testimony of the officers and did not find Cangro credible. As such, the impeachment of Prindle would not have bolstered Cangro's credibility such that there is a substantial likelihood that the outcome of the trial would have been different. Therefore, Cangro has failed to establish a probability sufficient to undermine this Court's confidence in the outcome of the trial. Accordingly, Cangro has failed to sastify the prejudice prong of the *Strickland* analysis.

As a result, Cangro did not allege a genuine issue of material fact that trial counsel's failure to impeach Prindle was constitutionally deficient or that Cangro was prejudiced as a result. Therefore, the district court correctly dismissed Cangro's petition for post-conviction relief with respect to the eluding charge.

## IV.
## CONCLUSION

The district court did not err in finding that Cangro failed to show he received ineffective assistance of counsel with respect to the eluding charge. Accordingly, we affirm the district court's judgment summarily granting in part, and dismissing in part, Cangro's petition for post-conviction relief.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.