IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49546

| | |
|---|---|
| DWAYNE CHARLES CHRISTIANSEN, | ) |
| | ) Filed: December 11, 2023 |
| Petitioner-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Dwayne Charles Christiansen appeals from the district court's judgment summarily dismissing his post-conviction petition. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Christiansen was charged with possession of a controlled substance (methamphetamine), Idaho Code § 37-2732(c)(1). Police sent the substance to the Idaho State Forensic Laboratory (lab) for analysis. In February 2019, lab employee Scott Hellstrom conducted the analysis and concluded the substance was methamphetamine. Later, issues relative to lab procedures were discovered, including that Hellstrom failed to follow proper procedures. Hellstrom's duties

1

included conducting, evaluating, and reporting verification tests on lab machinery called an FTIR.[1] The FTIR failed performance verification tests in July 2013, August 2018, January 2019, and April 2019. The FTIR verification failures were not discovered until May of 2019 because Hellstrom did not report them and instead certified that the FTIR had passed its verification checks.

Approximately one week before trial, the State provided a supplemental discovery response that explained Hellstrom was terminated for performance related issues. The open letter and supplemental response detailed Hellstrom's failure to follow lab testing procedures and documents related to the FTIR issues. Additionally, the notification explained that the State sent the samples back to the lab for retesting.

During Christiansen's jury trial, the lab employee who conducted the retesting, Rachel Cutler, testified that the substance at issue was methamphetamine. Christiansen's trial counsel did not cross-examine Cutler regarding Hellstrom, his original testing, or present an expert witness to highlight the lab issues. Christiansen was convicted and this Court affirmed his judgment of conviction and sentence. *State v. Christiansen*, Docket No. 47828 (Ct. App. March 15, 2021) (unpublished).

Christiansen filed a petition for post-conviction relief asserting a *Brady*[2] claim and ineffective assistance of counsel because his trial counsel failed to disclose all discovery materials, including impeachment evidence related to Hellstrom, and failed to scrutinize lab testing and equipment issues. Christiansen argued the State withheld impeachment evidence related to the lab issues and had the jury been informed of the issues relating to Hellstrom, there is a reasonable likelihood the jury would have returned a verdict of not guilty. The State filed a motion for summary dismissal. Christiansen filed a response asserting the issues went beyond Hellstrom's certification errors and that trial counsel would have been able to sway the jury if the lab errors had been made known earlier. The district court found Christiansen had not presented any evidence to support his claims that the lab issues were exculpatory or impeaching. The district court dismissed Christiansen's petition, finding his claims did not present an issue of material fact

---

[1]     FTIR refers to the Fourier-transform infrared spectroscopy machine, which is an instrument the lab uses to identify controlled substances.

[2]     *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding prosecution's suppression of material evidence violates due process).

under *Brady* and concluded he failed to demonstrate ineffective assistance of counsel. Christiansen timely appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho

3

353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

Christiansen argues the district court erred by summarily dismissing his petition for post-conviction relief. Specifically, Christiansen claims the State violated *Brady* by failing to timely and completely disclose all of the information relating to the lab issues which could have been used for impeachment purposes at trial. Christiansen asserts that trial counsel was ineffective for failing to call Hellstrom as a witness; failing to cross-examine the State's witnesses regarding

4

Hellstrom and the lab issues; failing to obtain an independent expert to review the lab failures and either testify at trial or help with cross-examination; and failing to inform him of the lab issues.

## A.     *Brady* and *Giglio* Claims

Christiansen argues he was denied his constitutional right to a fair trial because the State withheld impeachment evidence under *Brady* and *Giglio*.[3]  Christiansen argues the State failed to adequately notify his trial counsel of Hellstrom's misconduct and other lab issues.  Christiansen claims the State should have disclosed the information sooner than a week before the trial that the FTIR machine and lab procedures were impaired so that he could properly impeach witnesses. The State argues that the lab issues were neither exculpatory nor impeaching since they had nothing to do with the evidence of guilt based upon retesting the methamphetamine.

The State has a duty to disclose exculpatory evidence to a defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Establishing a *Brady* violation requires a three-part showing: (1) the evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) the State must have suppressed the evidence, either willfully or inadvertently; and (3) prejudice must have ensued. *Thumm v. State*, 165 Idaho 405, 422, 447 P.3d 853, 870 (2019).  The suppressed evidence must be prejudicial or material in that it demonstrates there is a reasonable probability that its disclosure to the accused would have led to a different result. *State v. Lankford*, 162 Idaho 477, 503, 399 P.3d 804, 830 (2017).  To establish a reasonable probability of a different result, a petitioner must demonstrate the withheld evidence undermines confidence in the outcome of the trial. *Id.* at 505-06, 399 P.3d at 832-33.  Demonstrating a reasonable probability that the suppression undermined confidence requires a "substantial, not just conceivable, likelihood of a different result." *Thumm*, 165 Idaho at 422-23, 447 P.3d at 870-71 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).  For *Brady* purposes, a defendant's due process rights are also violated when the State withholds material impeaching evidence. *Pizzuto v. State*, 134 Idaho 793, 796, 10 P.3d 742, 745 (2000).  "Impeachment evidence 'is that which is designed to discredit a witness, i.e., to reduce the effectiveness of the [the witness's] testimony by bringing forth evidence which explains why the jury should not put faith in [the witness or the witness's] testimony.'" *Schultz v. State*, 155 Idaho 877, 882, 318 P.3d 646, 651 (Ct. App. 2013) (quoting *Small v. State*, 132 Idaho 327, 334, 971 P.2d 1151, 1158 (Ct. App. 1998)).  Nondisclosure of

---

[3]     *Giglio v. United States*, 405 U.S. 150 (1972) (holding the State's duty to disclose includes impeachment evidence).

impeachment evidence may constitute a *Brady* violation when the "reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972).

### 1.     Favorable Evidence and Prejudice

Christiansen argues the lab issues could have been used to impeach the State's testing and call into question the validity of the lab results. The lab issues arose when Hellstrom ignored or overlooked the FTIR's internal error message on four separate months and used the equipment anyway. The FTIR machine indicated a "fail" message attributed to a particular wavelength tolerance beyond the scope required to identify methamphetamine. The district court found the lab identified the FTIR error, determined the wavelength's "out-of-tolerance" reading was due to inadequate polystyrene film thickness and corrected the issue; therefore, Christiansen could not establish a genuine issue of material fact that the lab issues were favorable to him. Even if counsel had attempted to impeach Hellstrom or testing procedures, the ultimate evidence and conclusions would not change. The district court, relying on the State's disclosure and evidence, found "[t]hat particular wavelength testing *did not affect the FTIR's ability to correctly identify methamphetamine*." The wavelength error did not affect Hellstrom's test results, and after the equipment was calibrated, retesting confirmed there were no misidentifications.[4]

The district court found, like in *Schultz*, that Christiansen had not presented any evidence that the lab issues had any effect on the test results, and thus, were not material and did not have a reasonable probability that earlier disclosure would have led to a different result. In *Schultz*, lab employees kept a box of unauthorized controlled substances for training and display purposes. *Schultz*, 155 Idaho at 881, 318 P.3d at 650. After Schultz received a letter disclosing these issues, he petitioned for post-conviction relief, but the district court summarily dismissed his petition because the State was not required to disclose material impeachment information prior to entering a plea agreement. *Id.* Schultz alleged the lab's unauthorized box contaminated all the tests but did not provide any evidence to support his claim. *Id.* at 884, 318 P.3d at 653. The district court dismissed Schultz's *Brady* claim and noted the State's disclosures did not alter the case or

---

[4]     Lab retesting determined Hellstrom's test results were correct. Also, substances for eight separate cases were reanalyzed using a GCMS machine which confirmed the results. In addition, the Quality Action Report 1630/6370 found the errors involved substance concentration and purity not identification.

undermine confidence in the ultimate outcome. *Id.* at 884 n.3, 318 P.3d at 653 n.3. While *Schultz* was a guilty plea case, its basic holding that there needs to be a "nexus" between the lab issues and the testing applies equally here.

Hellstrom was not a witness in Christiansen's case. Cutler retested the substance, again concluded it was methamphetamine, and testified as an expert at trial. The district court concluded, "[t]he evidence pertaining to the lab issues was not exculpatory because it would not tend to negate Christiansen's guilt or reduce his culpability." Once the FTIR errors had been remedied, the district court concluded Christiansen was "unable to establish prejudice because there is no nexus between the misconduct and the testing of the methamphetamine." Without a nexus, any attempts to impeach the trial testimony would not have negated the evidence and the evidence could not be favorable whether deemed exculpatory or impeaching.

In Christiansen's objection to summary dismissal, he claimed the disclosure issues went beyond Hellstrom's failures to properly certify lab equipment.[5] Christiansen has not presented sufficient evidence that calls into question all lab testing procedures or results. Retesting confirmed the substance was methamphetamine. Christiansen's conclusory allegations failed to provide any evidence that the lab issues affected the accuracy of the test results. Moreover, impeachment evidence relates to the fairness of a trial, and here the State's retesting removed any likelihood the jury would discredit the results. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002). Unless Christiansen created a substantial likelihood that, generally, Idaho's lab testing procedures are inadequate, his allegations are unsupported and immaterial.

### 2.    Suppressed Evidence

Unlawful suppression involves a prosecutor violating the duty to disclose favorable evidence and prejudice ensues. *Baker v. State*, 169 Idaho 284, 304, 494 P.3d 1256, 1276 (Ct. App. 2021). The favorable evidence must be material, constitutional error must result from its suppression, and there must be a reasonable probability that had the evidence been disclosed the results of the proceedings would have been different. *Id.* The late disclosure of evidence by the

---

[5]    Christiansen alleges the lab issues include the FTIR reported false positives, the FTIR used outdated polystyrene test strips, cracked FTIR lenses, and the failure to sanitize machinery between uses. Christiansen did not submit evidence tying FTIR lens cracking in 2020 to his case, and the district court found any such claim as unsupported. We agree. Christiansen presented no evidence the lens cracking had any relevance to the testing or testimony.

State can amount to a *Brady* violation if purposefully or negligently delayed. *Thumm*, 165 Idaho at 423, 447 P.3d at 871. The test for delayed disclosure is whether the delay prevented defendant's counsel from using the disclosed material effectively in preparing and presenting the case. *Id.* (citations omitted). When assessing the materiality of a late disclosure, we consider the significance of the late disclosure in light of the entire record and whether the evidence would alter the outcome of the case. *Id.*

The State became aware of Hellstrom's performance issues and retested the substance months before Christiansen's trial. Christiansen claims he was not notified of the lab issues until a week before his trial.[6] Christiansen claims because his trial counsel did not have more time to evaluate the information prior to trial, his counsel could not use it effectively. In light of all the evidence presented at trial, it is unlikely earlier disclosure would have changed the outcome. Even if the lab information was disclosed only a week before trial, the evidence was not favorable or material nor was it purposefully withheld. *See Thumm*, 165 Idaho at 423, 447 P.3d at 871 (finding no purposeful or negligent delay when the State gave fingerprint report to defense counsel a week before trial). The district court concluded that, "[b]ecause the evidence related to the lab issues was timely disclosed to Christiansen prior to trial, he has not established any *Giglio* violation." The record also shows the State filed a protective order a month before trial that contained exhibits concerning Hellstrom's termination, reports from the lab, and listed Cutler as the State's expert.[7] Christiansen's trial counsel had adequate time to examine the evidence and presumably chose to focus elsewhere precisely because it was not favorable or material. The State did not suppress material evidence, and there is no reasonable probability its earlier disclosure would have altered the outcome of trial. Accordingly, Christiansen's *Brady* and *Giglio* claims were properly dismissed because the impeachment evidence was not favorable to Christiansen, was provided to him, and would not have discredited the evidence.

---

[6]     The Supplemental Discovery Response received November 4, 2019, was a "Brady/Giglio" letter from the Bonneville County Prosecuting Attorney to all Seventh District attorneys dated November 17, 2019. Christiansen sought a speedy trial and expected a federal trafficking indictment. He was the first person to receive the State's supplemental discovery disclosure and chose not to have more time to review the information.

[7]     A Protective Order dated October 11, 2019, stated: "Upon audit by ISP Forensic Services, it was determined that no false positives or negatives resulted from Hellstrom's failure to follow procedures."

8

**B.      Ineffective Assistance of Counsel Claim**

Christiansen asserts the district court erred in summarily dismissing his claim of ineffective assistance of trial counsel because trial counsel rendered deficient performance that prejudiced Christiansen when he failed to address the State's substance testing, investigate the issue, vigorously cross-examine lab employees, or retain an expert witness to refute testing procedures. Christiansen argues there is a reasonable probability that, but for counsel's objectively unreasonable failures, the outcome would have been different due to impeachment of the lab testing.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). The constitutional requirement for effective assistance of counsel is not the key to the prison for a defendant who can dredge up a long series of examples of how the case might have been tried better. *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992); *Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008). When examining counsel's choice of witnesses, manner of cross-examination, and objections, we generally presume the performance was within the range of acceptability as tactical or strategic decisions. *Marsalis v. State*, 166 Idaho 334, 340, 458 P.3d 203, 209 (2020); *Thumm*, 165 Idaho at 413, 447 P.3d at 861. Because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

9

hindsight," a petitioner seeking post-conviction relief for a claim of ineffective assistance of trial counsel must overcome the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689-90; *see also State v. Abdullah*, 158 Idaho 386, 418, 348 P.3d 1, 33 (2015). Counsel's choice of witnesses and presentation or impeachment of medical evidence falls within the area of tactical or strategic decisions. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). "Strategic decisions are virtually unchallengeable if made after a thorough investigation of law and facts relevant to plausible options . . . [and] [d]ecisions made after less than complete investigation are still reasonable to the extent reasonable professional judgments support the limitations on investigation." *Abdullah*, 158 Idaho at 418, 348 P.3d at 22 (internal quotations and citations removed).

The district court determined Christiansen's ineffective assistance of counsel claims failed both the deficient performance and prejudice prongs of *Strickland*. The district court found Christiansen did not support his theory of lab testing failures with more than bare and conclusory allegations. We agree. Christiansen failed to provide any nexus between the improper procedures and the ultimate results introduced as evidence at his trial. As set forth above, the lab evidence was not material as exculpatory or impeaching. The district court found Christiansen had not provided any evidence of what any supposed expert testimony would have been. Christiansen argues an expert could have rebutted the State's testing conclusions and procedures. For the reasons discussed above, once the substance was properly retested, any impeachment of Hellstrom or other lab issues was not material. Christiansen cannot show his trial counsel was deficient for failing to focus on the lab testing issues or that counsel's failure to call an expert witness prejudiced him because ultimately the substance was properly tested and identified. In regard to impeaching Cutler, Christiansen failed to show how the lab issues involving Hellstrom would have had impeaching value or any effect on the ultimate outcome.

Therefore, trial counsel's decision not to call an expert witness or focus on the lab procedures is not based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. Christiansen's trial counsel exercised reasonable professional judgment determining the trial strategy, and thus, was not deficient. *See Baker v. State*, 169 Idaho 284, 296, 494 P.3d 1256, 1268 (Ct. App. 2021) (finding counsel's decision to not

10

use speculative testimony at trial a strategic decision).  Accordingly, the district court did not err in summarily dismissing Christiansen's claim of ineffective assistance of counsel.

## IV.

## CONCLUSION

The district court did not err in summarily dismissing Christiansen's *Brady* and ineffective assistance of counsel claims.  As a result, we affirm the district court's judgment summarily dismissing Christiansen's petition for post-conviction relief.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.